LOLLEY, J.
_JjThe Monroe City School Board, Vickie Dayton and James Dupree appeal the judgment of the Fourth Judicial District Court, Parish of Ouachita, State of Louisiana, which was partially in favor of the plaintiffs, Gannett River States Publishing Corporation d/b/a The News-Star and Barbara Leader (collectively, “Gannett”). In response, Gannett answers the appeal. For the following reasons we reverse the judgment of the trial court.
Facts
On Monday, October 6, 2008, Barbara Leader, an employee of Gannett and the education writer for its newspaper, The News-Star, delivered to the administrative offices of the Monroe City School Board (“MCSB”) a document titled “Public Records Request” directed to “Monroe City Schools Superintendent James Dupree” and “Betty Carroll, Human Resources Director.” Leader made the request pursuant to La. R.S. 44:1, et seq., and the specific records requested were:
1.Any written correspondence, electronic or otherwise, regarding the hiring or recommendation to hire Cassandra Shelling in any position with Monroe City Schools;
2. Communications between Mr. Sam Moore or any other administrator with Monroe City Schools and Monroe City Schools, James Dupree or Betty Carroll relating to Cassandra Shelling; and
3. Employee files on Cassandra Shelling a.k.a. Cassandra Green (“Dr. Shelling”).
The record also contains a copy of a letter from Dr. Dupree to Leader dated October 7, 2008, stating, “This letter serves as notice that we have complied with your Public Records Request dated October 6, 2008.” Gannett acknowledges that the MCSB complied with the public records request as to |2items 1 and 2 above. However, it asserts that the MCSB did not fully comply with the entire request in that it did not produce the documents in item 3, namely, Dr. Shelling’s employee files. On Monday, October 13, 2008, counsel for the MCSB responded and explained that the request for Dr. Shelling’s employee file required an examination of records, a determination of Gannett’s eligibility to inspect those records, and a determination of whether redaction of “non-public records material” was warranted.
Gannett filed its Petition for Writ of Mandamus on October 16, 2008, and the matter was set for hearing on October 22. Only then did the MCSB file a supplemental response to the records request, in which it raised several objections to the production of the remaining requested documents based on certain provisions of both state and federal law. After considering the applicable statutory law and jurisprudence, as well as the employment records in dispute, the trial court determined that some of the requested documents were subject to disclosure and some were not.
*835 Those documents it deemed subject to disclosure were placed in envelopes “A” and “C.” Those deemed not subject to disclosure were sealed and placed in envelopes “B” and “D.” The trial court also ordered attorney’s fees to Gannett pursuant to La. R.S. 44:35(D). This appeal by the Monroe City School Board, Vickie Dayton and James Dupree ensued, which Gannett has answered. Additionally, the MCSB filed a motion to seal all envelopes pending the appeal, so that Gannett has not had access to any of the documents, even those in envelopes “A” and “C.”
IsDiscussion
On appeal, the MCSB raises several assignments of error in connection with the trial court’s ruling ordering the disclosure of a portion of Dr. Shelling’s personnel file. We agree that a de novo review is warranted, noting that at issue are two separate statutory laws: the Louisiana Public Records Act, La. R.S. 44:1, et seq., and the School Employee Personnel Files Act, La. R.S. 17:1231, et seq.
The Louisiana Public Records Act, La. R.S. 44:1, et seq., provides for public access to information concerning state government as it is conducted through its many agencies. Fryar v. Guste, 371 So.2d 742 (La.1979). It is a product of La. Const. Art. 12, § 3, which provides that “No person shall be denied the right to observe the deliberations of public bodies and examine public documents, except in cases established by law.” Louisiana R.S. 44:1 (A)(2)(a) of the Louisiana Public Records Act defines “public records” as follows:
All books, records, writings, accounts, letters and letter books, maps, drawings, photographs, cards, tapes, recordings, memoranda, and papers, and all copies, duplicates, photographs, including microfilm, or other reproductions thereof, or any other documentary materials, regardless of physical form or characteristics, including information contained in electronic data processing equipment, having been used, being in use, or prepared, possessed, or retained for use in the conduct, transaction, or performance of any business, transaction, work, duty, or function which was conducted, transacted, or performed by or under the authority of the constitution or laws of this state, or by or under the authority of any ordinance, regulation, mandate, or order of any public body or concerning the receipt or payment of any money received or paid by or under the authority of the constitution or the laws of this state, are “public records,” except as otherwise provided in this Chapter or the Constitution of Louisiana.
|4The Louisiana Public Records Act was obviously intended to implement the inherent right of the public to be reasonably informed as to the manner, basis, and reasons upon which governmental affairs are conducted. Laws providing for the examination of public records must be liberally interpreted to extend rather than restrict access to public records. Skamangas v. Stockton, 37,996 (La.App. 2d Cir.03/05/04), 867 So.2d 1009, writs denied, 2004—1099 (La.06/25/04), 876 So.2d 839 and 2004-1125 (La.06/25/04), 876 So.2d 843.
However, La. R.S. 44:4.1 recognizes specific, stated “exceptions, exemptions, and limitations” to the Public Records Act, and states as follows:
A. The legislature recognizes that it is essential to the operation of a democratic government that the people be made aware of all exceptions, exemptions, and limitations to the laws pertaining to public records. In order to foster the people’s awareness, the legislature declares that all exceptions, exemptions, and limitations to the laws pertaining to public records shall be provided for in this *836 Chapter or the Constitution of Louisiana. Any exception, exemption, and limitation to the laws pertaining to public records not provided for in this Chapter or in the Constitution of Louisiana shall have no effect.
B. The legislature further recognizes that there exist exceptions, exemptions, and limitations to the laws pertaining to public records throughout the revised statutes and codes of this state. Therefore, the following exceptions, exemptions, and limitations are hereby continued in effect by incorporation into this Chapter by citation:
* * *
(8) R.S. 17:7.2, 46, 47, 81.9, 334, 391.4, 500.2, 1175, 1202, 1237, 1252, 1952, 1989.7, 2047, 2048.31, 3099, 3136, 3390, 3773, 3884[.] (Emphasis added).
IsSaid exception to the Public Records Act, La. R.S. 17:1237, states in pertinent part:
A. No school employee shall be denied access to his personnel file. The contents of a school employee’s personnel file shall not be divulged to third parties absent the express written consent of the school employee, except when ordered by a court or by subpoena, and no school system employee other than the personnel file custodian or the superintendent of schools for the system, or the designee of either who shall be a school system employee shall be allowed access to a school employee’s personnel file without the school employee’s express written consent, unless that employee is charged with the duty of supervising that particular school employee’s performance. In the case that a personnel file should be accessed by the superintendent or someone designated by him, the employee whose file was so accessed shall receive written notice of the fact and the name and title of the person who was permitted access. All persons permitted access under this Section shall maintain the confidentiality of those documents in the file which are not matters of public record. (Emphasis added).
So considering the statutory dictates, we are called to reconcile the two.[1] Here, the trial court rejected the MCSB’s argument that La. R.S. 17:1237 created a blanket exception to the Public Records Act, noting that the statute must be read in light of the other provisions of Title 17 and the need to balance the public’s right to know with a school employee’s right to privacy. Thus, the trial court effectively gave no force to either La. R.S. 44:4.1 or La. R.S. 17:1237. We believe that such a determination was in error.
| (¡Questions of law, such as the proper interpretation of a statute, are reviewed by this court under the de novo standard of review. Louisiana Municipal Association v. State, 2004-0227 (La.01/19/05), 893 So.2d 809. “Legislation is the solemn expression of legislative will, and therefore, the interpretation of a law involves primarily the search for the legislature’s intent.” La. C.C. art. 2; Detillier v. Kenner Regional Medical Center, 2003-3259 (La.07/06/04), *837 877 So.2d 100, 103. The interpretation of a statute starts with the language of the statute itself. Louisiana Municipal Association, supra. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written, and no further interpretation may be made in search of the intent of the legislature. La. C.C. art. 9.
The laws of statutory construction require that laws on the same subject matter must be interpreted in reference to each other. La. C.C. art. 13. The legislature is presumed to have acted with deliberation and to have enacted a statute in light of the preceding statutes involving the same subject matter. Louisiana Municipal Association, supra. “Under our long-standing rules of statutory construction, where it is possible, courts have a duty in the interpretation of a statute to adopt a construction which harmonizes and reconciles it with other provisions dealing with the same subject matter.” Hollingsworth v. City of Minden, 2001-2658 (La.06/21/02), 828 So.2d 514, 517.
A statute must be “applied and interpreted in a manner that is logical and consistent with the presumed fair purpose and intention the Legislature |7had in enacting it.” Sultana Corp. v. Jewelers Mut. Ins. Co., 2003-0360 (La.12/03/03), 860 So.2d 1112. In addition, “courts are bound to give effect to all parts of a statute and cannot give a statute an interpretation that makes any part superfluous or meaningless, if that result can be avoided.” Hollingsworth, supra at 517.
In the matter at hand, in order to reach a determination we must closely examine the pertinent statutes and give effect to all parts of the statutes at issue. It is not at all ambiguous that the Legislature intended for there to be some “exceptions, exemptions, and limitations” to the Public Records Act, otherwise La. R.S. 44:4.1 would not have been enacted. Notably, that statute lists 35 “exceptions” to the Public Records Act, each of which enumerated “exception” lists several specific section numbers. The Legislature specifically included La. R.S. 17:1237 in that “exceptions” statute. We cannot simply ignore that legislative intent, which we must presume was deliberate. The language of La. R.S. 17:1237 is strong: “The contents of a school employee’s personnel file shall not be divulged to third parties absent the express written consent of the school employee, except when ordered by a court or by subpoena....” (Emphasis added). The trial court’s judgment gave no force to that statute, nor to that portion of the Public Records Act that listed explicit exceptions to it. To affirm the trial court’s judgment would, in effect, ignore the legislative intent to provide stated exceptions to the Public Records Act, and we believe the trial court was incorrect in ignoring that obvious legislative intent. The trial court’s | finding made the explicit exception stated in the Public Records Act utterly meaningless.
We consider the trial court’s reliance on Skamangas, supra, misplaced. First, we note that Skamangas did not address an issue of an exception under La. R.S. 44:4.1, but the special treatment of records of prosecutive, investigative, and law enforcement agencies which is addressed specifically in La. R.S. 44:3. Second, noting that the “blanket exception” sought in Skaman-gas was ultimately determined not to be an exception, we observe the statement made in footnote 6 of the opinion:
We note that the legislature could have included such an exemption in the Public Records Act, but failed to do so. The legislature has enacted specific laws to prohibit disclosure of some records, for example: records in custody of the governor (La. R.S. 44:5), public hospital *838 records (La. R.S. 44:7), and judiciary commission records until filed by the commission with the supreme court (La. R.S. 44:10). See also La. R.S. 44:4.1, which lists a multitude of exceptions. It is within the province of the legislature to enact a wholesale exemption for internal affairs records.
Thus, the Skamangas court actually recognized that certain records might be specifically excepted from disclosure, as is the case here.
If we are to consider, interpret and apply La. R.S. 44:4.1 and La. R.S. 17:1237 in harmony, how does that affect Gannett’s request for Dr. Shelling’s personnel file from the MCSB? There is little “reading between the lines” necessary to interpret either statute—they are clear and unambiguous. We have already noted that La. R.S. 44:4.1 creates certain explicit exceptions to the Public Records Act, and La. R.S. 17:1237 is one of those specific exceptions. Louisiana R.S. 17:1237 provides that a school board employee’s personnel records “shall not be divulged” to any third [¡party unless one of three things happen: (1) the employee gives written consent for the disclosure; (2) a court orders the disclosure; or, (3) the records are subpoenaed.[2] Notably, none of those things happened in this case, because Gan-nett followed the procedures under the Public Records Act, i.e., it filed a writ of mandamus pursuant to La. R.S. 44:35. However, Gannett’s request to the MCSB was procedurally flawed from the start, because a request for school employee personnel files is not a public records request that can be enforced by a writ of mandamus—such records have been carved out of that statute as an exception under La. R.S. 44:4.1. We conclude that the procedure for seeking disclosure of such a record was not via the procedure set out under the Public Records Act, because such records are exceptions to the act.
Therefore, since the proper procedure for seeking such a record was not by writ of mandamus, it was incumbent upon Gannett to proceed against the school board via ordinary process and obtain a court order pursuant to La. R.S. 17:1237. And, as in any other ordinary proceeding, the burden of proof would lie with Gannett to show why it was entitled to this presumably confidential and private record. It would be Garnett’s burden to show what specific records it seeks and why—a general request for the entire record is insufficient to prove entitlement to the presumably confidential contents of the personnel file. Accordingly, the burden of proof for a request to | ^disclose an school employee personnel file is not upon the custodian of the records to show why the records were not public, which is the burden of proof required under the Public Records Act. Thus, in the case at hand the trial court misinterpreted the applicable statutory law by accepting Gannett’s request on its face as a public records request. As a result, the trial court erred in (1) applying the Public Records Act; (2) not considering the “exceptions” statute, i.e., La. R.S. 44:4.1; (3) not looking to La. R.S. 17:1237 for the proper procedure; and, (4) putting the burden of proof on the custodian of records to show why the records should not be disclosed.
Considering the foregoing, a discussion of the assignments of error raised by the MCSB in its appeal and Gannett in its answer to the appeal is pretermitted.[3] *839 Furthermore, considering that the writ of mandamus was not the proper procedure for obtaining the employee files of Dr. Shelling, La. R.S. 44:35(D) was not applicable, and the award of attorney’s fees was in error.
| hConclusion
For the stated reasons, the judgment of the trial court is reversed. All costs of these proceedings are assessed to Gannett River States Publishing Corporation d/b/a The News-Star and Barbara Leader.
REVERSED.

. After declaring the contents of school employee personnel files "confidential,” the Legislature added § 1238 and expressed that the Section was not to be construed to supersede the provisions of the Public Records Act, "to the extent that those provisions otherwise apply.” That is, if the information contained in the employee personnel file is a public record which is available from another source within the school administration, then the custodian cannot rely on the fact that the document is also a part of the contents of the employee’s personnel file to refuse the requestor access. Admittedly, some portions of a school employee's personnel file might be legitimate public records.

. "Divulge” means "(1) to make public: proclaim; (2) to make known (as a confidence or secret).’’ Merriam-Webster Online Dictionary.

. Of those various assignments of error, the issue of whether Gannett, a juridical person, *839 has standing to request public records pursuant to the Public Records Act was raised by the MCSB in the trial court. Notably, as argued by the MCSB, the statutes under the act appear to require a natural person making public records requests. The trial court noted a number of Public Record Act opinions where a juridical entity appeared as plaintiff. Simply because other juridical entities have appeared without objection as parties in some reported opinions is not necessarily reason as to why Gannett might have standing to appear as a plaintiff had this matter been a proper one under the Public Records Act. In fact, none of the cases cited by the trial court addressed that precise issue. However, for the reasons stated in Amoco Production Co. v. Landry, 426 So.2d 220 (La.App. 4th Cir.1982), writ denied 433 So.2d 164 (La.1983), we conclude that a juridical person is entitled to invoke the provisions of the Public Records Act. See also 82 A.L.R. Fed. 248, § 10 Corporations, noting federal court opinions which expressly ruled that various corporations seeking access to records under the federal Freedom of Information Act were members of the public or persons within the meaning of that act.